The court held that the plaintiff was entitled to equitable relief whether the case was one of fraud or mistake; that if it was a mistake the minds of the parties never met, and no actual contract was made. The authorities on this subject are numerous, but enough have been cited to justify the court below in setting aside the contract on the ground on which its judgment is based, viz. mutual mistake through the representations of the defendant Harned. If it be said that by the agreement the defendant had six months in which, if the plaintiff failed to procure a deed, he had the right to procure it himself, and this action is premature, and cannot be maintained till the expiration of that time, the answer is plain that it was not only the right, but also the duty, of the plaintiff to promptly disavow the contract as soon as the falsity of the representation was discovered.

The judgment should therefore be affirmed, without costs.

---

(13 App. Div. 476.)

MEAD v. AMERICAN FIRE INS. CO.

(Supreme Court, Appellate Division, Fourth Department. January 27, 1897.)

1. DOUBLE INSURANCE—OPERATION OF LAW—VIOLATION OF POLICY.
   Double insurance, resulting from the operation of law, and without design on the part of the insured, is not a violation of the condition contained in defendant's policy that it should be void if the insured should, without the consent of the insurer, "hereafter make or procure any other contract of insurance" on the property covered by defendant's policy.

2. SAME—INTENTION OF INSURER—ADMISSIBILITY OF EVIDENCE.
   Evidence of extrinsic facts and circumstances to determine the intent of an insured relative to double insurance is admissible where a policy was taken on goods in a designated barn, and the goods were afterwards removed, and others of a like nature stored in their place, and a policy was taken on the second lot with another company, and all the goods were burned, and the insurer under the first policy claimed it was a "shifting" policy, and attached to the second lot of goods, but that it was avoided because the second policy was additional insurance, and in violation of a clause in the first policy against such insurance.

3. SAME—PROOF OF LOSS—ESTOPPEL.
   The statement in proofs of loss that there was additional insurance on the property destroyed does not estop the insured from showing that the statement was made by mistake, and that there was no additional insurance.

Appeal from trial term, Orleans county.

Action by John Mead against the American Fire Insurance Company on a policy of insurance. There was a judgment in favor of plaintiff entered after a trial by the court without a jury, and defendant appeals. Affirmed.

In the summer of 1894, one D. J. Cummings was the owner of a traveling circus, and in the autumn of that year he stored the property and paraphernalia of his establishment in several different places in the village of Medina, Orleans county. The storage of this property was temporary only, and was to continue until the opening of the exhibition season in the following spring. While thus stored, and upon the 19th day of September, 1894, the owner procured of the defendant's agent a policy of insurance, by the terms of which the defendant insured him against loss or damage by fire, in the amount of $800, "on his wagons, harnesses, canvas, poles and stakes, ropes, and other tent equipments not more hazardous, all while contained in the frame, shingle-roof barn, south side of Oak

Orchard street, Medina, New York." At the time such insurance was effected there were but two wagons and two harnesses in the barn specified in the policy, and thereafter, and in the latter part of the month of October following, they were removed from the barn, and were never returned. Subsequently, and about the 10th day of December following, it became necessary to vacate a portion of a certain warehouse wherein some of the remaining circus property had been stored, and in consequence such property was removed to the Oak Orchard barn, which was owned by C. S. Hoag. Embraced in the property thus transferred to the Hoag barn were seven wagons and a padded harness,—the harness having been taken from the house of one Gallagher. These wagons and the harness were worth in the neighborhood of $2,000. Upon the day that the last-mentioned property was removed to the Hoag barn, Gallagher applied for, and obtained, from the Springfield Fire & Marine Insurance Company, a policy of insurance, by the terms of which it insured Cummings against loss or damage by fire, in the amount of $1,700, "on wagons, harness, tools, planks, hay, grain, and barn equipments, all while stored in C. S. Hoag's frame barn, situate south side of Oak Orchard street, Medina, N. Y." On the 26th day of January, 1895, the property covered by these two policies was totally destroyed by fire. Thereafter, and in due course of time, proofs of loss were made out by a lawyer residing in Medina, and were verified by Cummings, and served upon both companies. In the proofs of loss thus served upon the defendant, Cummings stated that, in addition to the amount named in the defendant's policy, there was $1,700 other insurance upon part of the property covered by such policy, as specified in Schedule B, which accompanied the proofs. Schedule B, thus referred to, specifies the property covered by the Springfield policy, in language identical with that which describes it in the policy. Subsequently Cummings assigned his cause of action upon the policy in suit to the plaintiff, who claimed, and upon the trial offered evidence tending to show, that the statement contained in Schedule B was erroneous, and was the mistake of the draftsman who drew the proofs of loss.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

W. N. Cogswell, for appellant.
S. E. Filkins, for respondent.

ADAMS, J. The policy in suit contains the following provision:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

It does not appear that any agreement for additional insurance was indorsed upon the policy, nor is it claimed that the defendant ever consented that such additional insurance should be, or received any notice that it had been, obtained from the Springfield Fire & Marine Insurance Company, prior to the service of the proofs of loss. The single question, therefore, which we are called upon to consider, is whether or not the procuring of this additional insurance was such a violation of the condition heretofore referred to as vitiated the defendant's policy. There is, of course, no claim that the wagons and harness specified in the second policy were the identical property covered by the defendant's contract of insurance; but it is insisted that, inasmuch as the policy in suit referred to the subject-matter of the insurance in general terms, without specifying any particular wagons or harnesses, the risk thereby assumed was what is termed a "shifting" risk, and one which attached to and embraced any and all wagons.

and harnesses which happened to be stored in the Hoag barn at any time during the life of the policy. The principle contended for by the learned counsel for the defendant, and which he seeks to have applied to this case, is one which has often been adopted by the courts in cases where it was the obvious intent of the parties that such a principle should apply, as indicated either by the language of the policy itself, the nature of the property insured, or the uses to which it was to be devoted. Wood, Ins. § 46. A familiar illustration of a case in which this rule might apply is that of a merchant who obtains an insurance upon merchandise which is liable to fluctuation and change in character, quantity, and value, by reason of daily sales and purchases. In these circumstances, to hold that the policy covered only such goods as were actually in stock at the time it was issued would deprive the contract of any practical value to the merchant, and therefore the only equitable construction to be adopted would be the one contended for by the defendant. But can it be said with equal propriety that the same or a similar reason exists for its adoption in the case we are considering? The wagons and harnesses covered by the defendant's contract were not articles of trade and commerce, nor were they articles which were likely to be affected by use. They constituted simply a portion of the paraphernalia of a traveling circus, which had been stored in the barn in question to await the opening of another season. Can it be claimed, then, that when the two wagons and harnesses which were in the building when the insurance was effected were removed, and seven other wagons, of greater value, and a single padded harness, were substituted in their place, the defendant's policy attached to and covered the last-mentioned property? How would the defendant have met such a claim as this, had it been pressed by the plaintiff?

But the question which has thus far been discussed, while full of interest, and perhaps not altogether easy of solution, is nevertheless one which, in our opinion, is not necessarily controlling in the case. The learned justice before whom this action was tried has found as a fact:

"That, at the time the policy of the Springfield Fire & Marine Insurance Company was issued, a list of the property thereby insured was shown to the agent of that company by the agent of said Cummings, and it was not the intent of said company to insure any of the property insured by the defendant."

And as a conclusion of law he further finds:

"That the policy in suit did not cover any of the property covered or insured by the policy issued by the Springfield Fire & Marine Insurance Company."

It is apparent from the language here quoted that the decision of the trial court involved, to a very considerable extent, the intent of the parties when the insurance represented by the two policies which have been referred to was effected, and that such intent was ascertained, not only from the policies themselves, but from extrinsic facts and circumstances. The duty, therefore, devolving upon this court, is to determine (1) what was the real intent of the parties; and (2) whether the trial court was justified in consider-

ing evidence dehors the written contract in order to ascertain that intent. In entering upon a discussion of these propositions, it may be well, at the outset, not to underrate the difficulties to be encountered; for, as has been well said by a text writer upon the subject of insurance:

"The problem of two policies, each containing a condition against other insurance, has worried the judges a great deal. * * * Almost every conceivable solution has been adopted in some jurisdiction or other, and there hardly exists in the law a more variegated chapter than this." 2 May, Ins. § 365, B.

It will be helpful, therefore, in our undertaking, if we bear in mind that not only is the burden cast upon the defendant of establishing by competent and satisfactory evidence the breach of the condition relative to additional insurance which is relied upon as a defense to the action (Richmond v. Insurance Co., 79 N. Y. 230), but that it is also the settled policy of the law to construe such a condition strictly against the insurer (Darrow v. Society, 116 N. Y. 537, 22 N. E. 1093). In the case of Rann v. Insurance Co., 59 N. Y. 388, it was said by Allen, J., that:

"In the interpretation of conditions inserted in, and making a part of, the contract by insurers, and in language chosen by them, care should be taken that a strained and unnatural effect should not be given to words and terms, to the prejudice of the insured."

And in Hoffman v. Insurance Co., 32 N. Y. 405–413, it was held that where words "were used in an enlarged or restricted sense, other things being equal, that construction will be adopted which is most beneficial to the promisee."

Proceeding, therefore, upon the lines thus pointed out for our guidance, what interpretation shall the condition in the defendant's policy receive? The language of this condition, so far as it is necessary to refer to the same in this connection, is that the entire policy shall be void if the insured shall, without the consent of the insurer indorsed thereon, "hereafter make or procure any other contract of insurance, whether valid or not, on the property covered in whole or in part by this policy." Now, in one aspect of the question, this language is perfectly plain, and free from ambiguity. It means precisely what it says, which is that, if the insurer obtains additional insurance upon the specific property covered by the policy, he must procure the written consent of the insurer thereto, or else be deprived of whatever security his contract of insurance was designed to afford him. But can it, by any rule of construction which is not strained or unnatural, be held to mean that if the insured obtains a policy in another company which was not designed to cover property already insured, and which can only be said to have that effect by operation of law, he violates the condition contained in his policy? We think the mere statement of this latter proposition is sufficient to show that the construction which is sought to be given to the language quoted necessarily involves a consideration of the intent of the parties, which may be ascertained from the policy itself, as well as "from such extrinsic evidence as may be necessary to identify the property described." Sanders v. Cooper, 115 N. Y. 279–285, 22 N. E. 212,

43 N.Y.S.—22

213. And just here another rule applicable to the construction of contracts of insurance may be invoked, which is, in substance, that, where the terms of the policy may be understood in more than one sense, the words are not to be taken in their broadest sense, but in that in which there is reason to suppose they were understood by the assured; that is, in their apparent intent. Hoffman v. Insurance Co., supra. We think we have already shown what was the apparent intent of the parties, as deduced from the policy itself, and the only sense in which there is any reason to suppose the language quoted was understood by the assured. But, if such language is capable of more than one construction,—that is, if its proper construction is involved in doubt,—then, most certainly, the trial court was justified in receiving evidence of extrinsic facts and circumstances to determine the intent of the plaintiff's assignor in obtaining the second policy of insurance. In this connection it may be well to advert very briefly to the evidence of this character which is relied upon by the plaintiff as justifying the conclusion reached by the court below. The first circumstance which suggests itself in this connection is that, upon the very day the seven wagons and the padded harness were removed to the Hoag barn, the second policy was procured; and this indicates very clearly that Cummings, or his agent, was acting upon the assumption that this particular property was not embraced in the policy obtained from the defendant. Again, the limit of the defendant's liability under its policy was $800, and the evidence tends to show that the value of the property destroyed which was covered by the policy in suit largely exceeded that sum. Is it reasonable, therefore, to suppose that the insured intended or understood that by placing his seven wagons, which were worth nearly $2,000, in the Hoag barn, he was to derive any benefit from the first policy? Still another circumstance which is not without its significance is that the second policy, in describing the property insured, makes use of the term "wagons and harness," instead of "wagons and harnesses," as in the first policy, which is some evidence, at least, upon the question of intent. On the other hand, it appears that, after the fire, proofs of loss were made out, which were signed and verified by Cummings, and forwarded to the defendant. These proofs contained the statement that the Springfield policy covered a portion of the same property insured by the defendant. And it is insisted that this is such an admission of additional insurance as concludes the plaintiff upon that question. Without any explanation, this declaration would, perhaps, have the effect claimed for it, but it does not estop the plaintiff from showing that it was made by mistake, and that, as a matter of fact, there was no such additional insurance. McMaster v. Insurance Co., 55 N. Y. 222. It appears that both of these policies were obtained by one Gallagher, who was the managing agent of Cummings, and who knew all about the property, and had a printed list of the same; Cummings himself testifying that personally he had very little knowledge of it. After the fire, Cummings took the two policies to a lawyer, and requested him to

make out the proper proofs of loss, in doing which it is apparent that the latter was forced to rely upon such data as were furnished him. Whether or not the statement then made was erroneous was a question of fact for the trial court, and we are not disposed to interfere with its conclusion thereon.

To epitomize the whole matter, then, we think that double insurance resulting from the operation of law, and without design upon the part of the insured, is not a violation of the true spirit and intent of the condition contained in the defendant's policy (Vose v. Insurance Co., 39 Barb. 302); that even if the risk covered by the policy in suit did attach to the property thereafter removed to the Hoag barn, there being no imputation of fraud in the case, it may be shown by facts and circumstances outside of the policy that it was not the intention of the insured to obtain double insurance (May, Ins. § 366); and, lastly, that the trial court having found, upon conflicting evidence, that there was no such intent, its decision ought not to be disturbed.

Judgment affirmed. with costs.    All concur.