### BERNARD v. UNITED LIFE INS. ASS'N.

(Supreme Court, Appellate Division, First Department. February 5, 1897.)

INSURANCE—APPLICATION—ACTS OF AGENT.

    False answers in an application for life insurance are imputable to the insured though she answer the questions truthfully, and the person taking the application, who was employed by the insurer to solicit insurance, willfully inserted the false answers without her knowledge, where the application contained a provision that the person taking it was the agent of the insured. 39 N. Y. Supp. 356, reversed.

Appeal from appellate term, First division.

Action by Mary C. Bernard against the United Life Insurance Association to recover on a policy of life insurance. From a judgment of the appellate term (39 N. Y. Supp. 356) affirming a judgment of the general term of the city court (37 N. Y. Supp. 1143), which affirmed a judgment entered on a verdict in favor of plaintiff, and an order denying a motion for a new trial on the minutes, defendant appeals. Reversed.

For decisions on a former appeal, see 32 N. Y. Supp. 223, and 33 N. Y. Supp. 22.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Edmund F. Oldham, for appellant.
Lyman W. Redington, for respondent.

WILLIAMS, J.    Action to recover upon a policy of life insurance issued by the defendant upon the life of Elizabeth A. Kelly, for the benefit of the plaintiff. Defense, breach of warranty, in that certain statements and answers contained in the application upon

which the policy was issued were untrue. The application, among other things, provided:

"It is hereby agreed that the answers and statements in this application (parts 1 & 2), whether written by the applicant or not, are warranted to be full, complete, and true, and that this agreement and the constitution or by-laws of the association, with the amendments thereto, together with this application, are hereby made part of any policy that may be issued thereon; that if any of the answers or statements made are not full, complete, and true, or if any condition or agreement shall not be fulfilled as required by such policy, then the policy issued hereon shall be null and void, and all money paid thereon shall be forfeited to said association; that the person soliciting or taking this application, and also the medical examiner, shall be the agents of the applicant as to all statements or answers in this application, and no statements or answers made or received by any person or to the association shall be binding on the association, unless such statements or answers be reduced to writing, and contained in this application."

## In the application were the following questions and answers:

"(10) Has any proposal to insure the life of the applicant ever been postponed or declined? If so, by what company or association, and for what reasons? None. (11) Has any proposal or application to insure the life of the applicant or for membership ever been made to any company, association, or agent, upon which a policy or certificate of membership has not been received by you in person for the full amount and kind, and at the rate applied for? No. * * * (13) Has any physician given an unfavorable opinion upon the life of the applicant with reference to life insurance or otherwise? If so, state particulars. No."

Upon the trial it appeared, without contradiction, that the assured had, before the making of this application, applied for insurance to the Mutual Reserve Fund Life Association, and had been examined by the physician of that company; that, upon such examination, the physician had reported against the risk, and the company had thereupon rejected the application. These answers were therefore untrue, and constituted a breach of warranty, which invalidated the policy upon which this action was brought, unless the plaintiff successfully avoided such result, by the evidence given at the trial, as to the transactions between the agent taking the application and the beneficiary and assured. All this evidence was taken under the objection and exception of the defendant. The evidence was given by the agent and the beneficiary, the plaintiff, and it was substantially as follows: They both testified that the agent called upon the plaintiff at her sister's house; that he asked her the questions in the application, and that she answered them; and, in answer to questions 10, 11, and 13, she told the agent the truth; that the assured had made an application to the Mutual Reserve, and had been rejected by that company, but that the agent, instead of writing the answers to these questions as she gave them, inserted the negative answers to which reference has been made. The plaintiff testified that, the application having been filled up, she took it to her mother, and they both signed it, without reading or knowing its real contents. The agent then took the application, delivered it to the defendants, and upon this application the policy was issued. The agent testified that he wrote the answers to these questions, in the application, as he did, knowing the answers to be untrue; but the plaintiff testified that she supposed he wrote them as she gave them, and did not know the contrary until after the death of the assured.

There was no evidence given that the defendant or its officers had knowledge of the real facts or of the fraud of the agent. There was no proof given as to authority conferred by the defendant upon the agent as to taking applications, except what was contained in the application and policy, and the fact that he solicited and received the application. It seems to us that this parol evidence, under the provisions of the contract of insurance, was inadmissible, and that it did not operate to avoid the breach of warranty and consequent invalidity of the policy. The contract was a valid one, and should be enforced. It was clear and distinct in its terms. It was the evident intention of the defendant, by its policies, to protect itself in two respects: First, against any attempt by the agent and the insured, conspiring together, to defraud the company, by presenting to it an application containing false statements and answers, and securing a policy thereon which would not have been issued if the truth had been known to the company; second, against any attempt by the beneficiary, after the death of the assured, by parol evidence, to avoid the effect of false statements and answers in an application upon which a policy was actually issued. To accomplish this purpose of self-protection, the defendant inserted the provisions in its policies. No construction can be given to the language of these provisions which will defeat the real protection to the defendant sought to be thereby secured. Here we have parol proof given by the beneficiary and the agent, both, to the effect that the statements and answers complained of as false and untrue were inserted in the application by the agent with full knowledge and understanding that they were false and untrue.

It is claimed that neither the beneficiary nor the assured knew that the statements and answers which the agent did insert were contained therein when the application was signed and delivered to the agent, but that they believed the truth was stated in the application. Proof of this claim was made by parol. Indeed, the knowledge of the agent that the statements and answers were false, and the consequent fraud of the agent, were shown only by parol proof; that is, by the statements made by the beneficiary to the agent. This is just what the contract, in effect, was designed to protect the defendant against. There are numerous cases in the books in which, in the absence of these provisions in the contract, it was held that insurance companies were bound by the knowledge of their agents acquired by such statements to them, proved by parol. This provision has been inserted in insurance contracts, in view of these decisions, to protect the companies from these frauds; and we are unable to see how it can be held that the companies have not the legal right to make such contracts. Applicants are under no obligation to take the policies with such provisions inserted. The contracts are voluntarily made, and the only escape from the contracts thus made is to say that the provisions do not mean, and were not intended to mean, what, in the clearest possible terms, they provide. We cannot assent to the proposition that the court may thus nullify contracts deliberately made and entered into between parties. There is no reason for saying that insurance companies deliberately

43 N.Y.S.—34

send out agents knowing them to be dishonest, and with intent to have them deceive and defraud innocent applicants for insurance. It should be assumed that the companies are honestly conducted, and that they do not desire to issue policies which may be avoided by reason of false and untrue answers and statements in the applications, for the purpose of obtaining premiums thereon, and then avoiding them. What they desire, and what by this provision, in their contracts, they seek to do, is to protect themselves against the frauds of their agents and of applicants for insurance, and against the giving of parol evidence to avoid the breach of warranties in their policies. It cannot be said, in view of these provisions in their policies, that agents authorized merely to solicit and receive applications to be presented to the companies so far represent the companies as that the companies are, notwithstanding such provisions, bound and estopped by the knowledge of such agents or the information received by them as to the falsity or untruthfulness of the answers or statements in the application. These provisions in the policy specially negative such claim. In the absence of these provisions, it was held that it was part of the duty of the agents to fill up the applications, and that, in so doing, they represented the companies; but these provisions expressly limit the scope of the agency by providing that the agents, in doing these acts, should be the agents of the applicants, and not of the companies. We are unable, in any view of the case, to see how it can be said that the defendant was in this case estopped from asserting the warranty and the breach thereof as invalidating the policy. The company was entitled to insist and have the benefit of the warranty, and to allege its breach as a complete defense to this action.

The views herein expressed are fully sustained by the authorities. Rohrbach v. Insurance Co., 62 N. Y. 47, was an action upon a policy issued for insurance against fire. The statements made in the application were, by its terms, made warranties as to the facts stated. Those statements were untrue, and it was held that there was a breach of warranty which prevented a recovery, though the applicant stated the facts truly to the agent, who filled up the application, and the error was that of the agent. By the policy it was agreed that the agent should be deemed the agent of the assured, and not of the company; and it was held that the knowledge of the agent was immaterial, and did not avoid the effect of the warranty. The court said:

"It is argued by the plaintiff that the error and omission were those of the defendant. But the plaintiff and the defendant have in the policy, the contract between them, expressly agreed that Brand, the agent, should be deemed the agent of the plaintiff, and not of the defendant, under any circumstances. * * * It is to be regretted that corporations of the power and extended business relations with all classes in the community which insurance companies have should prepare, for illiterate and confiding men, contracts so practically deceptive and nugatory, and should, in cases as free from fraud and wrong on the part of the insured as this is, hold their customers to the letter of an agreement so entered into. I am aware that often the companies are made the victims of dishonest and designing persons, but I cannot agree that the remedy for that is to refuse to be bound by the acts of agents of their own selection when dealing with simple and unlettered men. If there should be less greediness for business, and such

care in the selection and appointment of agents as would insure the confidence of the companies in their capability, discretion, and integrity, it would not need that there be laid upon unwise policy holders an agreement to take the burden of the opposite qualities in those put forward to them as actors for the insurers. But we must take the contracts of the parties as we find them, and enforce them as they read. By the one before us, the plaintiff has so fettered himself as to be unable to retain, as the case now stands, the real essence of his agreement. Though he has frankly and fully laid before the actor between him and the defendant all the facts and circumstances of the case, he is made responsible for error in legal conclusions which he never formed, and which were arrived at by one in whom he trusted, and whom he supposed to stand in the place of the defendant. * * * Held to the letter and substance of his contract, the plaintiff made a breach of warranty and condition precedent, upon the truth of which his contract rested, and for that reason may not recover in this action as the facts now stand."

Kabok v. Insurance Co. (Sup.) 4 N. Y. Supp. 718, was an action upon a life insurance policy, wherein it was provided the statements and answers in the application should be warranties, and that the agent, in the preparation of the application, should be the agent of the assured, and not of the company, and untruthful statements were inserted by the agent by mistake or otherwise. It was held that the policy was invalid, and no recovery could be had thereon. The court said:

"The force and effect of this clause was to render the acts of the agent, in filling out the application, those of the applicant and his wife, for this policy of insurance; and, being their acts, the defendant was not responsible for the misconduct or misapprehension of the agent, through which these answers were incorrectly made a part of the application. But they were, by this clause, made the acts, representations, and warranties of the applicants for the insurance; and, for the consequence of their inaccuracy, they, and not the company, are the persons who were responsible. If the agent inserted answers in the application which he was not authorized to make a part of it, it is to him, and not to the defendant, that the plaintiff is entitled to look for indemnity; for as the agent of herself and husband, which he was declared to be by this part of the application, he was bound to exercise reasonable care, to use a reasonable degree of attention in performing the service which in this manner he was employed to render; and if he failed to do that, either negligently or fraudulently, under well-settled principles of law, he may be made liable for the consequences of that failure. But as long as he was, by the application, which was made a part of the insurance, and adopted by the policy, the agent for the applicants for the insurance, they, and not the defendant in this controversy, must be charged with the responsibility of his acts."

It has been urged, inasmuch as he was the agent of the company itself, that this warranty or agreement contained in the application may be avoided. And the case of Insurance Co. v. Wilkinson, 13 Wall. 222, has been brought to the attention of the court as sustaining this position. But there neither the application nor the policy contained any provision or agreement that the agent filling out the application should, in so doing, be held to be the agent for the applicant for insurance, and not of the company issuing the policy; and that fact so far distinguishes that case from the one now before the court as to deprive this authority of the effect it has been urged should be given to it by way of sustaining the action. The case, instead of being an authority for the plaintiff, in reality sustains the defense made by the company, for in the course of the opinion it was said:

"If the writing containing this representation had been prepared and signed by the plaintiff in his application for a policy of insurance on the life of his wife, and if the representation complained of had been inserted by himself, or by some one who was his agent alone in the matter, and forwarded to the principal office of the defendant corporation, and acted upon as true by the officers. of the company, it is easy to see that justice would authorize them to hold him to the truth of the statement, and that, as they had no part in the mistake which he made, or in the making of the instrument which did not truly represent what he intended, he should not, after the event, be permitted to show his own mistake or carelessness, to the prejudice of the corporation."

### And it was further added:

"It is not to be denied that the application, logically considered, is the work of the assured; and, if left to himself or to such assistance as he might select, the person so selected would be his agent, and he alone would be responsible."

Insurance Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, was an action brought upon a life insurance policy, wherein it was provided that the statements and answers in the application were warranties, and that no statement to the agent not therein contained, and thus transmitted to the company, should be binding upon it. The agent, without the knowledge of the applicant, wrote down false answers, concealing the truth; and the applicant signed the application without reading it, and it was by the agent transmitted to the company, and the company thereupon assumed the risk. If the answers as given by the applicant to the agent had been written in the application, the company would have declined the risk. It was held that the policy was void, and no recovery could be had thereon. The court said:

"It is conceded that the statements and representations contained in the answers, as written, of the assured, to the questions propounded to him in his application, respecting his past and present health, were material to the risk to be assumed by the company, and that the insurance was made upon the faith of them, and upon his agreement, accompanying them, that, if they were false in any respect, the policy to be issued upon them would be void. It is sought to meet and overcome the force of this conceded fact by proof that he never made the statements and representations to which his name is signed; that he truthfully answered those questions; that false answers written by an agent of the company were inserted in place of those actually given, and were forwarded with the application to the home office; and it is contended that, such proof being made, the plaintiff is not estopped from recovering. But on the assumption that the facts as to the answers were as stated, and that no further obligation rested upon the assured in connection with the policy, it is not easy to perceive how the company can be precluded from setting up their falsity, or how any rights upon the policy ever accrued to him. It is, of course, not necessary to argue that the agent had no authority from the company to falsify the answers, or that the assured could acquire no right by virtue of his falsified answers. Both he and the company were deceived by the fraudulent conduct of the agent. The assured was placed in the position of making false representations, in order to secure a valuable contract, which, upon a truthful report of his condition, could not have been obtained. By them the company was imposed upon, and induced to enter into the contract. In such a case, assuming that both parties acted in good faith, justice would require that the contract be canceled, and the premiums be returned. As the present action is not for such cancellation, the only recovery which the plaintiff could properly have upon the facts he asserts, taken in connection with the limitation upon the powers of the agent, is for the amount of the premiums paid, and to that only would he be entitled by virtue of the statute of Missouri. But the case as presented by the record is by no means as favorable to him as we have assumed. It was his duty to read the application he signed. He knew that upon it the policy would be issued, if issued at all. It would introduce great uncertainty

into all business transactions if a party making written proposals for a contract, with representations to induce its execution, should be allowed to show, after it had been obtained, that he did not know the contents of his proposals, and to enforce it, notwithstanding their falsity as to matters essential to its obligations and validity. Contracts could not be made, or business fairly conducted, if such a rule should prevail; and there is no reason why it should be applied merely to contracts of insurance. There is nothing in their nature which distinguishes them in this particular from others. But here the right is asserted to prove, not only that the assured did not make the statements contained in his answers, but that he never read the application, and to recover upon a contract obtained by representations admitted to be false, just as though they were true. If he had read even the printed lines of his application, he would have seen that it stipulated that the rights of the company could in no respect be affected by his verbal statements, or by those of its agents, unless the same were reduced to writing, and forwarded with his application to the home office. The company, like any other principal, could limit the authority of its agents, and thus bind all parties dealing with them with knowledge of the limitation. It must be presumed that he read the application, and was cognizant of the limitations therein expressed. * * * The present case is very different from Insurance Co. v. Wilkinson, 13 Wall. 222, and from Insurance Co. v. Mahone, 21 Wall. 152. In neither of these cases was any limitation upon the power of the agent brought to the notice of the assured. Reference was made to the interested and officious zeal of insurance agents to procure contracts, and to the fact that parties who were induced to take out policies rarely knew anything concerning the company or its officers, but relied upon the agent who had persuaded them to effect insurance, 'as the full and complete representative of the company in all that is said or done in making the contract'; and the court held that the powers of the agent are prima facie co-extensive' with the business intrusted to his care, and would not be narrowed by the limitations not communicated to the person with whom he dealt. Where such agents, not limited in their authority, undertake to prepare applications, and to take down answers, they will be deemed as acting for the companies. In such cases it may well be held that the description of the risk, though nominally proceeding from the assured, should be regarded as the act of the company. Nothing in these views has any bearing upon the present case. Here the power of the agent was limited, and notice of such limitation given by being embodied in the application, which the assured was required to make and sign, and which, as we have stated, he must be presumed to have read. He is therefore bound by its statements."

We do not deem it necessary to refer to further authorities. These are sufficient to indicate the well-settled rules of law applicable to the conceded facts in this case.

Our conclusion is that the judgment and order appealed from were erroneous, and should be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.