(19 App. Div. 18.)

### WELLS v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Appellate Division, Fourth Department. June 12, 1897.)

1. LIFE INSURANCE—PROOFS OF DEATH—CORRECTION OF ERRORS.
   One who has applied for and taken out a policy of insurance on the life of another is not estopped, by the making of statements, in proofs of death under such policy, inconsistent with statements made in the application, from showing that such statements in the proofs of death were inadvertently made, and were in fact not true.

2. SAME—APPLICATION—UNAUTHORIZED STATEMENTS.
   One W. applied, through an agent, to the M. Life Ins. Co., for a policy of insurance on the life of her brother. The form of application was in four parts, one of which was to be signed by the applicant, one by the insured, and the others by the medical examiner or agent of the company. W. furnished the information for the first part of the application, signed it, and delivered it to the agent of the company to procure the signature of the insured to the second part, and to present the application to the company. The second part of the application was never signed by the insured, but was signed in his name by some unauthorized person, and contained false statements. The part of the application signed by W. contained an agreement making the agreements and warranties in the second part her own, as if signed by her, including provisions that untrue answers should render the policy void, and the policy subsequently delivered was expressed to be made in consideration of all the statements in the application as warranties. Held,

that, notwithstanding such stipulations of the application and the policy, W. was not bound by the false statements made by some other than the person she had intended and expected to execute the application, and the company, having, by the issue of the policy, impliedly assured W. that the application had been signed by the person whose signature its agent undertook to procure, was bound by the policy, and liable, upon the death of the insured, for the amount of it.

Green and Follett, JJ., dissenting.

Appeal from trial term, Oswego county.

Action by Mary Wells against the Metropolitan Life Insurance Company. Judgment for plaintiff. From an order denying a motion for new trial on the minutes, defendant appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

William S. Jenney, for appellant.
D. P. Morehouse, for respondent.

ADAMS, J.   This action was brought upon a policy of life insurance for $360 issued upon the 27th day of November, 1893, by the defendant to the plaintiff upon the life of her brother, one Martin Mahaney, who died upon the 22d day of May, 1895. Shortly after the death of the brother, two agents of the defendant, one of whom was its assistant superintendent, called upon the plaintiff, and prepared the proper proofs of death, which were duly signed by the plaintiff and delivered by her to the agents, who immediately forwarded the same to the company. After waiting a reasonable length of time for the defendant to pay the plaintiff's claim, this action was commenced. The defendant interposed an answer to the complaint, in which it averred that it was relieved from all liability upon the policy in suit by reason of the breach of certain conditions and warranties which it, as well as the written application upon which it was issued, contained. The policy in question recites that the defendant—

"In consideration of the printed and written application for this policy, and of the statements therein contained, all of which are hereby made warranties, and are hereby made part of this contract, and of the payment to the company on or before the date hereof of the premium mentioned in the schedule below, and of a like weekly premium to be paid on or before each Monday during the continuance of this policy, doth hereby agree, subject to the conditions set forth on the reverse side hereof, each and all of which are hereby made a part of this contract, and are accepted by the assured, as part thereof, as fully as if herein recited, to pay to one of the persons described in condition first, upon receipt of proofs of the death of the insured, made in the manner, to the extent, and upon the blanks required by condition sixth, and upon surrender of this policy and all the receipt books, the amount of money stipulated in said schedule under the words 'Amount of Insurance': provided, however, that no obligation is assumed by this company prior to the date hereof, nor unless on said date the insured is alive and in sound health."

Among the conditions set forth on the reverse side thereof was the following:

"Second. The liability of the company shall cease if the insured shall hereafter engage in military or naval service (except the militia when not in active service), or be connected in any capacity with the ale, wine, or liquor business, unless so specified in the application heretofore referred to, or unless permission signed by the president or secretary be indorsed on this policy. * * *"

46 N.Y.S.—6

And it is alleged that there was a breach of this condition, in that the insured, Martin Mahaney, after the issuing of the policy, engaged in the business of selling liquors, without the written permission of the president or secretary of the company indorsed upon the policy. The only evidence upon which the defendant bases this contention is to the effect that, after obtaining this insurance upon her brother's life, the plaintiff herself did engage in the saloon business, and that the insured took his meals at her house, and occasionally volunteered to wait on a customer at the bar when the plaintiff was not present. He was not the regular bartender; neither was he employed by the plaintiff to dispense liquors at her bar; and the service which he rendered her was purely gratuitous, and only occasional. The learned trial justice clearly and properly stated to the jury what constituted the "business of selling liquors," as that term is used in the policy, and permitted the jury to say, as a matter of fact, whether there had been any violation of this condition on the part of the insured. We doubt very much whether the evidence upon this branch of the case was sufficient to raise an issue of fact, but, however that may be, the defendant certainly has no just cause for complaint at the disposition made of the question by the trial court.

It appears from the record before us that the written application upon which the policy in suit was issued, and which is therein made a part of the contract of insurance, is subdivided into four different parts, which are designated, respectively, A, B, C, and D. Part A, which contains certain statements and representations respecting the person upon whose life the insurance is sought, is required to be signed by the applicant; part B is required to be signed by the insured; and parts C and D, which relate to the physical condition of the insured, by either the examining physician or the agent of the defendant. When the plaintiff decided to take out this policy, the information required by part A was furnished by her, and was written into the application by the defendant's agent, one D. P. Dowd, who testified upon the trial that it was signed by the applicant in his presence. Among the representations and warranties in the application thus signed was one to the effect that the subject of the insurance was born upon the 18th day of October, 1872, and that his age at his next birthday would be 22 years. There was also another to the effect that the life of Martin Mahaney was not then insured in any other company, society, or association. It is now insisted by the defendant that each of these representations was false in a material particular, and that in consequence thereof the policy became null and void. This claim of falsity is based upon certain statements contained in the proofs of death signed by the plaintiff on the 30th day of May, 1895. These statements were, first, that the deceased was born in June, 1871, and that the deceased had another policy of insurance, of $90, in the Prudential Insurance Company, which was three years old. These statements certainly were inconsistent with those contained in the plaintiff's application, and, if true, they probably constituted a breach of warranty which avoided the policy. The plaintiff, however, was not estopped by reason of having made these statements in the proofs of death from showing that they were inadvertently made, and that as a matter of

fact they were not true.    McMaster v. Insurance Co., 55 N. Y. 222; Mead v. Insurance Co., 13 App. Div. 476, 43 N. Y. Supp. 334.    This she was permitted to do, and we have no hesitation in saying that the evidence, as a whole, satisfies us beyond any reasonable doubt that the statement respecting additional insurance which was contained in the application was literally true, and that so far as the one relating to the age of her brother is concerned, a question of fact was presented, which was solved by the jury in favor of the plaintiff, upon evidence which was amply sufficient to warrant the conclusion reached. We conclude, therefore, that upon both of these questions the verdict of the jury must, in the circumstances of the case, be regarded as conclusive upon this case.

The question which remains for our consideration is a somewhat novel one, or perhaps it would be more accurate to say that it is one which arises from rather peculiar conditions, and it is apparently one upon which the defendant bases its main reliance for a reversal of the judgment and order appealed from.    It appears that, when the plaintiff executed part A of the application for the insurance upon the life of her brother, the other parts of the printed form were unexecuted, and no answers had been furnished to any of the questions therein contained.    So that, when signed and delivered to the defendant's agents, the plaintiff obviously was wholly unaware of what representations, warranties, or statements the application would ultimately contain, when executed by her brother and the examining physician.    Nevertheless, in the part which was signed by her there appears the following agreement, viz.:

"I hereby apply for the above-described policy, and hereby, to induce the company to issue the policy, and as a consideration therefor, make the agreement as to agency, and all other agreements and warranties contained on the other side of this sheet, part thereof, as fully as if I had signed the same."

And the agreement and warranties contained on the other side of the street, which are thus made a part of the plaintiff's application, are to the effect that the application was made, prepared, and written by the applicant, or by her own proper agent, and that the company is not to be taken to be responsible for its preparation, or for anything contained therein or omitted therefrom, and, furthermore, that the representations and answers made upon either side of the application are strictly correct and wholly true; that they shall form the basis and become a part of the contract of insurance; that any untrue answers shall render the policy issued thereon null and void; and that the insured should be governed by the rules and regulations of the defendant, as they existed at the time the contract was entered into, or as they might thereafter be amended or altered.    It also appears that at the time the policy was delivered to the plaintiff she was furnished with a copy of the defendant's rules and regulations, among which was a rule requiring that applications for insurance must be personally signed upon their face by the person applying for the insurance, and on the back by the life proposed.    It now appears that at some time, but precisely when is involved in great uncertainty, part B of the application was filled out, and answers to the various questions therein contained were written in; and it purports to have been signed by

Martin Mahaney, whose life was insured. The questions contained in this part of the application relate to the age, health, and physical condition of the insured, and also to the condition of health of certain of his relatives who were living, and to the cause of death of such as were not living. It seems to have been conceded upon the trial that some of the answers to these various questions were untrue in fact, and that these statements would, under ordinary circumstances, constitute a breach of the contract of insurance. If, therefore, this constituted a full and complete statement of the facts of the case, so far as this particular feature of it is concerned, there would, of course, be little or no difficulty in reaching the conclusion that the policy in suit had become null and void in consequence of the breach of warranty to which reference has just been made. But just here comes in the singular feature of the case to which allusion has been made, which is that it is claimed by the plaintiff and conceded by the defendant that Martin Mahaney never signed, or authorized any one to sign, his name to that part of the application which purports to have been signed by him. So that we have this somewhat anomalous condition of things: That the plaintiff is seeking to enforce a contract of insurance which is supposed to be founded, to some extent, at least, upon a written application which is required by the insurance company to be signed by the person whose life is insured, and which she insists was never signed by him; while, upon the other hand, the defendant is seeking to escape liability upon its contract of insurance by reason of false statements contained in the application, which it concedes was not signed by the person who purports to have signed it. The case, therefore, so far as this particular feature of it is concerned, seems to resolve itself into these two propositions: Is the plaintiff bound by the answers to the questions contained in part B, it being conceded that the signature of her brother thereto is not genuine? And is the defendant liable upon the policy in suit, in the absence of an application executed in due form by the person whose life is insured?

In attempting to answer the first query, it may be assumed that the statements contained in part B, or some of them, are false; and that, if made by the insured, they would necessarily vitiate the policy. As has been shown, the plaintiff had stipulated, as an inducement for the issuing of the policy by the defendant, that she would abide by, and become responsible for, the agreements and warranties to be thereafter made in part B. This stipulation, however, it is but fair to suppose, was based upon the assurance, either express or implied, that the representations and answers should be made and signed by the proper person. In other words, her agreement with the defendant, to all intents and purposes, was that she would guaranty the truthfulness of any and all representations which her brother would make in response to the inquiries contained in part B. And, when the defendant's agent left the plaintiff with the application in his possession, it was for the avowed purpose of procuring this information from the only person who could properly furnish it. The plaintiff, therefore, when she received the policy and accepted its terms and conditions, had the right to assume, we think, that it had been issued upon the genuine statements and signature of her brother. As has already been sug-

gested, it does not appear who signed the name of Martin Mahaney to part B, or whether it was signed before or after his death, and this, perhaps, is of little consequence; for, whenever and by whomsoever signed, it was, so far as the record discloses, a forgery, of which the plaintiff was totally ignorant, and for which it would be a travesty of justice to hold her responsible. With this conclusion reached, it becomes necessary to consider the case from the point of view involved in the second proposition above stated.

It is claimed on the part of the defendant that inasmuch as the plaintiff stipulated to be governed by the rules and regulations of the company, one of which was that the application must be personally signed "on the back by the life proposed," the policy issued to her could have no validity until this rule was complied with. This contention, which is presented with no little ingenuity, fails to make the same impression upon our minds which it appears to have made upon the mind of the counsel who advances it. But, whatever force it may possess as an abstract proposition, we think the circumstances of this case furnish at least two complete answers to it. In the first place, the rule obviously relates to a detail of the business, and was designed for the convenience of the defendant. But, however that may be, it is certainly one the observance of which may be waived. Will v. Cable Co., 3 App. Div. 22, 37 N. Y. Supp. 933. And if the defendant saw fit to issue its policy upon a forged statement, or what amounts to the same thing, without any statement at all, we do not see how it can now take any advantage of its own act, by claiming that its policy is thereby invalidated. Assuming, however, that this rule possesses the force claimed for it by the defendant, it seems to be conceded that it was not brought to the attention of the plaintiff until after the policy had been delivered to her. Such delivery, therefore, was, in our opinion, equivalent to an assurance by the defendant that all the preliminary requirements of the application and policy had been fully complied with.

It is further argued in support of the defendant's contention that inasmuch as one of the plaintiff's stipulations is to the effect that the application was "made, prepared, and written by the applicant, or by her own proper agent," she is bound by any fraud or forgery perpetrated by the person filling out any portion thereof, even if that person happens to be the agent or other officer of the defendant; and our attention is directed to a recent decision in the First department, which, it is claimed, is an authority for this proposition. Bernard v. Association, 14 App. Div. 142, 43 N. Y. Supp. 527. This case holds that an insurance company may properly insert a provision in its policies similar to the one above quoted, in order to protect it against the frauds of its agents, as well as of parties applying for insurance, and also to prevent the avoidance of a breach of warranty by parol evidence. It does not require a very astute mind, therefore, to discover that it is of very little practical benefit to the defendant, in the circumstances of the case in hand; for the plaintiff is not attempting to relieve herself from an embarrassing dilemma by claiming that her brother had furnished to the defendant's agent true answers to the questions contained in the application which he was required to sign,

but that the agent, instead of writing in the answers given him, had inserted different ones. She is simply insisting that what purports to be the signature of her brother to his part of the application is a forgery, for which she should not be held responsible. That Martin Mahaney never signed his name to the application is, as we have seen, not only conceded, but it is expressly averred in the defendant's answer; and that it was placed there by some one in the defendant's employ seems to be fairly inferable from the evidence before us. In these circumstances, to hold that the condition in the defendant's contract of insurance which we have been considering will protect it against its own fraud would require an extension of the doctrine of the Bernard Case to a point beyond which we think is fairly warranted. The case under consideration, in our opinion, is more properly one requiring the application of the very salutary rule that where a general agent of an insurance company delivers a policy, and receives the premium thereon, with full knowledge that some stipulation or condition upon which depends the very inception of the contract has not been fulfilled, the company may not thereafter be permitted to defeat the contract by asserting a breach of such stipulation or condition. Wood v. Insurance Co., 149 N. Y. 382, 44 N. E. 80; Robbins v. Insurance Co., 149 N. Y. 477, 44 N. E. 159. Our conclusion of the whole matter, therefore, is that the case was properly tried, and that the verdict of the jury should not be disturbed.

Judgment and order affirmed, with costs.

HARDIN, P. J., and WARD, J., concur.

GREEN, J. I dissent from the conclusion reached by a majority of the court. The plaintiff was aware of the conditions imposed by the company upon an applicant for insurance upon the life of another. The application for such insurance was not completed until the execution by the insured of the agreements and warranties to be by him executed, and made a part of the plaintiff's application. Although the portion of the application signed by plaintiff was delivered to the agent of the defendant with the evident intention of having the other portion of the application properly executed, yet the plaintiff, under the terms of her agreement with the defendant, made the person to whom she delivered the application her agent for that purpose. The obligation was upon her to see that the statements to be made by the insured were made and signed by him. She could do this personally, or through her agent. She chose the latter method. She must be bound by his acts of omission or commission in the transaction of the business thus delegated to him. The company had the right to protect itself in the manner in which it did. The plaintiff certainly is presumed to know the conditions imposed upon her by the company, and which were necessary to be observed by her as a condition precedent to a liability of the company under the contract to be executed. There was nothing to hinder her from ascertaining whether or not he had fulfilled upon his part the requirements necessary to a valid contract with the company. By her negligence she made it possible for a fraud to be committed against the company. Having done

that, she, rather than the insurance company, should bear the consequences. She signed an instrument which referred to agreements and warranties which were to be made and inserted in other portions of the document signed by her, and delivered the same to her agent, with an implied authority upon his part to have the instrument completed. Having done that, she made no further investigation or inquiry respecting her warranties and agreements as contained in the completed application, and seeks to avoid her warranties on the ground that the name attached to the statements to be signed by the person whose life is insured is a forgery. It is not claimed that the company had any notification that the application was not complete, or that it was false, or that the name attached to the statement purporting to be signed by the one whose life was insured was a forgery. Suppose the whole application had been a forgery, and defendant had sent plaintiff a policy, which she accepted and paid the premiums on; could she have repudiated the application as a forgery, and recovered on the policy? This plaintiff was the contracting party, and by forwarding this application or proposal was bound by it. This was her side of the contract, and, if she is not to be held to it, there was no proposal, the minds of the parties never met, and there was no contract of insurance. Defendant entered into the contract with plaintiff relying upon her covenants. If she were deceived by the person whom she delegated to complete her part of the transaction, the company ought not to suffer, because it was possible for this plaintiff, by the exercise of reasonable care, to have prevented the fraud which it seems was perpetrated. The obligation rested on her, and no omission of duty is imputable to the insurer. If this company cannot in this case avail itself of the express stipulations of the contract, there is no conceivable case where such conditions can be availed of, and it may as well be said now that such stipulations and covenants have no binding force and effect. The judgment and order should be reversed, and the complaint dismissed.

FOLLETT, J., concurs.