(22 App. Div. 495.)

O'FARRELL v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Appellate Division, Second Department.    November 30, 1897.)

1. APPEAL—OBJECTIONS WAIVED.
    Where, in an action on a policy of life insurance, the plaintiff, in pursuance of a suggestion by the court, and without objection, assumes at the trial the burden of establishing that there was no breach of warranty, he cannot insist on appeal that defendant held the burden of establishing a breach.

2. ACTION ON POLICY—APPLICATION—WARRANTY AS TO STATEMENTS.
    The application upon which a policy of life insurance was issued, and which contained a false statement of fact on behalf of the insured, provided that "it is agreed and warranted that this application has been made, prepared, and written by the applicant or by his own proper agent." In an action on the policy it appeared that the person who filled in the application was in fact the agent of the company, and that it was not read over to the insured. Evidence offered by plaintiff to show that the insured stated correctly the fact in question, and that the agent put down an incorrect answer, was excluded, on the ground that the insured was bound by the act of the agent. *Held*, that the warranty was inapplicable, and the exclusion error.

Appeal from special term.

Action by Ann O'Farrell, as administratrix of Patrick O'Farrell, deceased, against the Metropolitan Life Insurance Company. From a judgment dismissing plaintiff's complaint on the merits, she appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Wood & Morschausre, for appellant.

C. N. Bovee, Jr. (J. McG. Goodale on the brief), for respondent.

HATCH, J. The claim upon the part of the plaintiff that the defendant held the burden of proof, and was bound to establish affirmatively that there was a breach of warranty which avoided the policy, is probably correct. Spencer v. Association, 142 N. Y. 505, 37 N. E. 617; Dougherty v. Insurance Co., 3 App. Div. 313, 38 N. Y. Supp. 258. The point, however, is not now available to the plaintiff, as no exception was taken to the ruling; and, in pursuance of a suggestion by the court, the plaintiff assumed the burden of establishing that there had been no breach of warranty, and must now stand or fall upon the case as made or attempted to be made.

At the close of plaintiff's proof, the court dismissed the complaint. The ground of dismissal was that there had been a breach of warranty of the conditions of the policy, in that the insured had made false answers to questions propounded to him in the application. These claimed misrepresentations consisted in a statement by the insured that he had had no disease, and had never been attended by a physician; that at the time of making the application he was in sound health; that neither parents, brothers, nor sisters had ever had consumption,—to each of which questions the insured gave answer in the negative, as appears from the application made for the insurance. It appeared from the proofs of death that one brother and a sister had, prior to the application for insurance, died of con-

sumption. There was no attempt made upon the part of the plaintiff to show that such statement contained in the proofs of death was the result of any inadvertence or mistake, or that the statements contained therein were not true. The attempt made upon the trial by the plaintiff was to show that in fact the insured had made to the agent of the insurance company correct answers to the questions propounded to him, and that he then informed the agent that his brother and sister had died of consumption, and that the agent put down incorrect answers. So far as the proof disclosed, it did not appear that as to the other questions false answers had been given. The proof offered by the plaintiff was objected to by the defendant; and excluded by the court, to which an exception was taken. The ground of this exclusion seems to have been that, by a clause in the application, the insured constituted the agent writing the same his agent for the purposes of the application, and, in consequence, was bound by the act of the agent in writing down the false answers, and that plaintiff could not now be heard in repudiation of them. This clause of the application, so far as important, is as follows:

"Declaration and Warranty by the Insured.

"It is agreed and warranted that this application has been made, prepared, and written by the applicant, or by his own proper agent, and that the company is not to be taken to be responsible for its preparation or for anything contained therein or omitted therefrom. And the undersigned hereby declares and warrants that the representations and answers made above and on the other side of this sheet are strictly correct and wholly true; that they shall form the basis and become part of the contract of insurance (if one be issued); that any untrue answers will render the policy null and void. * * *"

The application also contained the following:

"Application to the Metropolitan Life Insurance Co., F. J. Perkins, Agent, at Poughkeepsie, under E. F. Meyer, Asst. Supt."

The application also provided for the agent's certificate that he had personally seen and examined the person, and that each question was answered as recorded. The proof showed that Perkins took the application for insurance; that he was then acting for the company; that he produced the application, and wrote down the answers; that the paper was not read or its contents stated after it was filled up; that the insured signed it, and Perkins took it away with him. Unless the agent taking the application for the insurance is to be regarded as the agent of the insured, the latter cannot be charged with responsibility for the omission of the agent to give the answer made by the insured to the question, whether the answer was mistakenly made incorrect, or was a willful falsification by the agent. Peters v. Insurance Co., 10 App. Div. 533, 42 N. Y. Supp. 348.

It is a general rule of law that an agent can only represent one principal, and, where parties are dealing at arm's length, the agent cannot have an adverse interest or employment. Modifications of this rule may be found in particular cases, but only where there has been a full and complete disclosure of the dual relation, and an assent thereto by the parties interested. It has long been settled

that, where one is delegated to act for another, he may not act for himself or a third person in any wise adverse to the interest of his principal.    Dutton v. Willner, 52 N. Y. 312.    The fiduciary character of the relation leads logically to the conclusion that singleness in character and purpose must be upheld in order that integrity may be made secure, and this is true not only of the agent, but of the principal.    If a principal may appoint an agent to act for him, and then, by contract, force a party dealing with him to accept such agent as his agent, and be bound by his acts, it follows that practical exemption may be obtained for fraud of such agent.    In cases of corporations, who can only act through agents, it is quite possible that the agent, under such circumstances, may perpetrate a fraud entirely beyond the power of the party dealing with him to discover, and the principal originally appointing the agent reap all the benefits of such agent's fraudulent acts, and escape all liability therefor. This is particularly true of insurance companies.    They appoint the agent in the first instance, have full and ample opportunity to make the selection, may enter into such contract respecting security as seems to them best, can regulate his conduct by rules; in a word, they may have practically absolute control over him.    Such agent thus appointed is equipped by the company with blanks, finely printed with innumerable conditions, and is sent out to solicit insurance. He applies to a person to insure.    Such person may be able to read and write, and yet his occupation be of such a character that his practical use of these acquirements may be quite limited.    Little used to business or business forms, it is quite easy to see that he may be disposed to place almost entire credence in the statements made by the agent.    He answers such questions as are put to him by the agent, and finally signs his name in the place where he is directed to sign upon the application.    He does not read the same, nor is it read to him; and, thus without knowledge upon the subject, he has placed himself entirely within the power of the agent of the company, is committed to such answers as have been written down, and has bound himself by express contract to adopt the acts of such agent as his own.    He continues to pay his premiums until death ensues, and then those for whom he hoped to make provision, and for which he has made payment, find that the contract is void, that no provision was made for them, arising out of the mistake or fraud of the agent soliciting the insurance.    In the meantime the company has received the benefits of the insurance, profited by the mistake or misconduct of the agent selected by it, and goes free of liability.    And, if such rule be enforced, it must always happen that, in the volume of insurance business which is done, a percentage of it, which experience in the courts shows is quite large, must result as above outlined.    It is only necessary, therefore, that the finely-printed contract be drawn strong enough in order to exempt the company from the consequences of the fraud of its own agent, although the suffering party was in no measure responsible therefor.

It is small comfort to say that parties must be bound by their contracts, for the fact remains that thousands of persons neither read such contracts, nor would they understand their legal effect

if they did. The company is the party that understands this condition perfectly, is presumed to understand the character of its agents, presumptively vouches for their integrity, gave them employment, and yet is permitted by the law to stipulate for immunity from their acts. It would seem as if such a contract comes dangerously near to offending against the requirements of a sound public policy. Nor is it answer to say that the contracts are voluntarily made by the insured, or that the companies seek to protect themselves from fraud being practiced upon them. The contracts are ignorantly made, and are only voluntarily entered into because not understood. The company possesses the power to protect itself by the selection of its agents, and should not be exempted from liability when selection is made of a person without character, who is thus foisted upon the public to commit wrongs and defraud a class of persons who are in a measure helpless. The argument which pleads for the company as respectable is not a whit stronger than the one which pleads for the people as honest. There is no reason to believe that people will commit perjury for the purpose of establishing an unjust claim, any more than there is that they will do it in an attempt to establish any other act. Take the present case. There was no attempt to deceive this company by withholding the cause of death of the brother and sister. The facts were presented. We are impressed by the fact that a contract ought not to be upheld which in its practical working exempts the company from liability for the fraud and mistake of its agent. An insurance company which employs an agent of so little moral sense that he will subsequently take the stand to swear that he committed a fraud in writing the application ought not to be heard to plead an exemption. It employed him, and should be held bound for the consequence of his acts.

We should be willing to hold this doctrine as an original proposition. There is, however, authority opposed to this view, where the law laid down seems to be that, if the stipulation be broad enough to constitute the person writing the application the agent of the insured, he will be bound thereby, in accordance with its terms. Bernard v. Association, 14 App. Div. 142, 43 N. Y. Supp. 527, where the question is discussed and the authorities collected. We do not now commit ourselves to the doctrine of this case. Assuming, however, it to be a correct exposition of the law, it is not controlling of the question now before us. Looking at the present contract, we see that it is different from the one considered in the Bernard Case. There the language of the contract was "that the person soliciting or taking this application, and also the medical examiner, shall be the agents of the applicant as to all statements and answers in this application." In the case at bar there is nothing in the warranty which shows any intent to constitute an agent of the company as the agent of the insured. Its language is that the application "has been made, prepared, and written by the applicant, or by his own proper agent." This language excludes the idea of an employment of the company's agent. It speaks of the party's agent,—an act of himself or his agent. And, where it appears that in fact the

agent of the company wrote the application, I am of the opinion that this operated as a waiver of this clause, and worked an estoppel upon the company from denying that the whole of the application was not its act. In the Bernard Case the language does not admit of this construction. There it speaks of the person, and makes him the agent, no matter who it is. Here the stipulation is that the act shall be done by the party or agent. But when it appears that it was not, but was done by the company, it can and should be bound thereby. The application itself shows that the agent who solicited the insurance, and wrote out the application, was in fact the agent of the company. The case, therefore, is brought within the doctrine of Sprague v. Insurance Co., 69 N. Y. 128, Whited v. Insurance Co., 76 N. Y. 415, and Bushaw v. Accident Co. (Sup.) 8 N. Y. Supp. 423, where a similar provision is construed. These views lead to the conclusion that the evidence offered should have been received.

The judgment should therefore be reversed, and a new trial granted; costs to abide the event. All concur, except GOODRICH, P. J., who concurs in the result.