(15 App. Div. 515.)

CHINNERY v. UNITED STATES INDUSTRIAL INS. CO.

(Supreme Court, Appellate Division, Second Department.   April 6, 1897.)

1. LIFE INSURANCE—CONDITIONS OF POLICY—"TREATMENT IN HOSPITAL."
    A person was not "under treatment in a hospital," within the meaning of a question in an application, where she went, by appointment, to the hospital to have some foreign substance taken from her eye, and returned home the same evening.
2. SAME—PROOF OF DEATH—EVIDENCE.
    An allegation in a complaint that proofs of death were furnished as required by the policy sued on is supported by proof of delivery of a paper headed "Proofs of Death," and reciting the facts required by the policy.
3. SAME—PHYSICIAN—CERTIFICATE.
    It is error, in an action on a policy, to exclude from evidence the attending physician's certificate of death, though it appeared on his examination that he was ignorant of some of the facts certified.

Appeal from trial term, Westchester county.

Action by Michael Chinnery against the United States Industrial Insurance Company on a policy of life insurance.   From a judgment entered on a verdict directed by the court in favor of plaintiff, defendant appeals.   Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Edward W. S. Johnston, for appellant.

Joseph F. Daly, for respondent.

GOODRICH, P. J.   The defendant issued its policy of insurance, dated January 21, 1895, upon the life of Catharine Chinnery, who died of consumption, February 4, 1896.   One Buckley, the person who secured from Miss Chinnery the application for the policy, testified that, of the questions contained in the application, the only ones which he asked her were how old she was, if she had been insured in or rejected by any other company, the name and number of the street on which she lived, etc., whether she was married or single, when she was last sick, and what her then condition of health was. He testified that he did not ask her about ever having been treated in a hospital, and that he wrote the answers himself.   The application contained three answers which the defendant claims to constitute false statements, viz.:

"Q. What is the present condition of health?  A. Good.  Q. When last sick? A. Never.  Q. Has said life ever been under treatment in any hospital, asylum, or other institution?  A. No."

The hospital answer is shown to have been technically untrue, because the insured, as shown in the proofs of loss, was on one occasion at a hospital "for eye trouble, about 25 years ago,—St. Johns

Hospital, Yonkers." The plaintiff testified that some 25 years pre-viously something had blown into the eye of Miss Chinnery, that she went to the hospital, by appointment, to have it removed, and returned the same evening. It is sufficient to say that, in our own opinion, this was not being "under treatment in any hospital," within the meaning of the policy. It had nothing to do with the general health of the assured, and, if it had been known to the defendant, could not possibly have been considered by it as a reason for refusing to issue a policy of insurance to the applicant.

A more serious question, however, arises on the other answers, that the applicant was in good health, and had never been sick. The policy provided that the defendant would pay the amount of insurance "within 24 hours after proofs satisfactory to said company shall be received at its said office of the death, cause of death, and age of the person named in the schedule herein contained," and that "proofs of death, including information as to age, character, and duration of illness and cause of death, must be made on blanks furnished by the company, all questions therein must be answered, and such answers shall be conclusive evidence against the claimant of the facts therein stated." The complaint alleged that due notice of the death of Miss Chinnery was furnished to the defendant, as required by the terms and conditions of the policy. This allegation was denied by the defendant, but without specifying any defect therein, and there is no evidence that the defendant refused to receive the papers as proofs, or ever returned them. The plaintiff offered in evidence a paper headed "Proofs of Death," which, we may assume, was upon a blank furnished by the defendant. This paper was suf-ficient evidence of the furnishing of due notice of death, as alleged in the complaint and referred to in the first cited clause of the policy, wherein the company agreed to pay the insurance after satisfactory proofs as to death, cause of death, and age of the insured. The paper contained these facts, and, prima facie, complied with the policy. The other clause of the policy required proofs of death to be made on the company's blanks. These blanks, by their questions, required other answers which the policy declared should be conclusive evidence against the plaintiff of the facts therein stated; and, while we are of the opinion that the first paper offered by the plaintiff fully complied with the requirements of the policy as to proofs and cause of death, yet it is evident that the plaintiff referred the company to Dr. Browne, as the attending physician, for other facts.

Subsequently, the defendant put in evidence a paper which is headed "Attending Physician's Certificate of Death," and signed by Dr. Browne. This paper contained a statement that the duration of the last illness was several years, during which the assured had been sick with consumption, of which she died. The plaintiff testified that he took this blank to Travis, the superintendent of the defendant, asked him if he should take it to the doctor, and was told that the company would attend to that; and it would appear that the company did procure it, and that the plaintiff had nothing to do with it. We are of opinion that, although, under all circumstances, the plain-

tiff might not be bound conclusively by the contents of that paper, which is an unsworn document, signed by Dr. Browne, yet its exclusion was error.    The defendant had the right to have it in evidence. We are not unmindful of the fact that, when Dr. Browne was examined as a witness for the defendant, his evidence disclosed that he was ignorant of certain alleged facts therein appearing.    He testified that he was called in to attend the deceased in January, 1895, and saw her occasionally before that time, when called in to see members of the family, and prescribed medicines for her; that this might have been some six months before January; that he did not recollect whether he attended her in June, 1888, and had no special record of it; that, though he had a record of his attendance at the house, he could not say whether he attended her between the dates named, though, to the best of his recollection, he prescribed for her twice between 1888 and 1896; that he could not definitely say when he first discovered that she was consumptive, but definitely discovered it in January, 1896; that he had occasionally treated her for disease of the lungs, perhaps for a year or six months, and added that, in his opinion, at that time (apparently the date of her death) she had suffered from that disease over a year, and perhaps several years, and that he could not tell positively how long she had had consumption; that he made a preliminary examination some time, but did not think it was before January, 1895; and that he had no memory of being called to attend her before that time.    His testimony is distressingly vague, and hardly rises to the dignity of evidence sufficient to sustain the statements of his certificate, that Miss Chinnery had had consumption for several years, but still, it was testimony which the defendant had the right to have submitted to the jury.    We think, therefore, that the learned trial justice erred in excluding the attending physician's certificate of death, and in directing a verdict for the plaintiff.

The judgment should be reversed, and a new trial granted.    All concur.