Mary E. Genung, Respondent, *v.* Metropolitan Life Insurance Company, Appellant.

*Insurance — contract, when consummated — condition of health when the policy is delivered — warranty as to the date when the assured was last under a physician's care — submission of specific questions to the jury, when assented to — waiver of conditions by a general agent.*

A man employed by an insurance company to solicit policies procured an application for insurance from his father on July 29, 1899. August 17, 1899, the district superintendent of the insurance company gave the policy to the agent for delivery, accompanied by a receipt for the first premium. August 23, 1899, the agent met his father upon the street and handed him the policy. The latter then offered to pay the premium, but as it was near train time, the agent told him that it was not necessary; that he had thirty days in which to make the payment. September 5, 1899, the insured drew a check for the premium to the order of the district superintendent of the insurance company, which check was forwarded by the company's agent and was not returned until after the death of the insured, which occurred on the 25th day of September, 1899.

It appeared that the insured visited a physician August 22, 1899, and continued under his care until the check was forwarded to the insurance company.

The policy provided that "no obligation is assumed by this company upon this policy until the first premium has been paid and the policy duly delivered, nor unless upon the date of delivery the insured is alive and in sound health." It appeared, however, that the agent was authorized to deliver the policy upon his own judgment as to the good health of the insured.

*Held,* that the physical delivery of the policy by the defendant's agent, the offer of the deceased to pay the premium at that time and the deferment of payment on the assurance of the agent of the company that the insured had thirty days within which to make the payment, and the subsequent delivery of the decedent's check to the agent of the company, constituted in law a consummation of the contract and imposed a liability upon the company unless fraud was shown;

That the jury was authorized to determine that the insured's physical condition at the time the policy was delivered was such as to warrant the agent in assuming that he was in that degree of health fairly contemplated by the parties;

That evidence that the insured had been treated by a physician in 1896 and 1899 for slight indispositions which did not prevent him from attending to his business, did not constitute a breach of a warranty contained in the policy to the effect that the insured was last under a physician's care in 1895, and that that was the last time he was confined to the house by illness.

Where the court presiding at a jury trial calls upon the jury to determine several specific questions, and counsel, while excepting to the submission of each of them, makes no request to have any other question submitted to the jury

or to have the case submitted to the jury in any other form, he is not in a position to contend, upon an appeal, that this disposition of the case amounted to a special verdict and that all of the issues should have been, and were not, submitted to the jury.

_It seems, that a general agent of a company may waive performance of a condition of its policy.

APPEAL by the defendant, the Metropolitan Life Insurance Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Dutchess on the 30th day of August, 1900, upon the verdict of a jury, and also from an order entered in said clerk's office on the 22d day of August, 1900, denying the defendant's motion for a new trial made upon the minutes.

C. N. Bovee, Jr., for the appellant.

C. Morschauser, for the respondent.

WOODWARD, J. :

Mary E. Genung, widow of Lewis White Genung, of Johnsville, this State, brings this action to recover upon a policy of insurance written by the Metropolitan Life Insurance Company for $2,000 upon the life of her husband, and for her benefit. The defendant claims that the policy was never delivered by it; that no first premium was ever received by it, and that, consequently, the contract of insurance never had an inception. It is also urged that the plaintiff's husband was guilty of breaches of warranties. Upon the trial of the action the learned court submitted certain specific questions to the jury, and upon the verdict rendered a judgment in favor of the plaintiff, from which appeal comes to this court.

Fred L. Genung, a son of Lewis White Genung, was employed by the defendant as its agent in soliciting life insurance and in delivering and receiving the money for such policies; the superintendent of the defendant testified as to the custom of the company that " the assistant usually gives the policy to the agent and he takes it out, and on his own authority as to the good health of the insured he delivers the contract and collects the money." While acting as such agent, Fred L. Genung procured an application for insurance

from his father, Lewis White Genung. This application was made on the 29th day of July, 1899, and on the seventeenth day of August in the same year a policy of insurance was written by the defendant, and by its district superintendent placed in the hands of Fred L. Genung for delivery in the manner described above. With this policy was a receipt in the usual form for the annual payment of $115.20, signed by the secretary of the company, and dated August 17, 1899, countersigned, under date of September 5, 1899, by J. K. Voshell, the district superintendent. The policy was not delivered to the deceased until the twenty-third day of August, at which time the agent of the defendant testifies that he met Lewis White Genung in the city of New York, upon a public street, and handed him the policy. The insured offered to pay the premium at that time, according to the testimony, but as it was near train time the agent told him that it was not necessary; that he had thirty days in which to make the payment. There is a provision in the policy that "no obligation is assumed by this company upon this policy until the first premium has been paid and the policy duly delivered, nor unless upon the date of delivery the insured is alive and in sound health," and this is the contract which was entered into by the deceased, and not the provision set forth on the face of the receipt, that it was not to be "binding upon the company until countersigned by the cashier of the ordinary department, at the home office, or the superintendent of the district in which payment is made, nor until the premium has actually been paid in *cash*."

It appears from the evidence that on the 22d day of August, 1899, the deceased, at the request of his wife, visited Dr. Conklin, who prescribed for him on that occasion, but it was also in evidence that deceased continued about his business, and that he visited New York on the following day, where he received the policy from the defendant's agent, who is conceded to have been authorized to deliver the policy upon his own judgment as to the good health of the insured. While it may not be said that this is so far conclusive upon the defendant as to prevent any question being raised, it can hardly be doubted that it was a question which the jury were authorized to determine whether the deceased was in such a condition as to warrant the agent in assuming that he was in that degree of health fairly contemplated by the parties. (*Cushman* v. *United*

*States Life Ins. Co.,* 70 N. Y. 72, 77.)   On the fifth day of September, the insured having in the meantime continued to receive the attention of his physician, the check of Lewis White Genung was drawn, payable to the order of the defendant's district superintendent, and by the company's agent forwarded in a letter to one of the employees of the defendant company.   This check was not returned until after the death of the insured, which occurred on the 25th day of September, 1899.

The learned trial court submitted five questions to the jury, it appearing from the evidence that the policy, when delivered as prescribed by the regulations of the company, related back to the date of the contract, which, with the answers given, are as follows:

"*First.* Was the deceased in sound health on August 23, 1899? Answer. Yes.

"*Second.* Was the deceased in sound health on August 17th and 18th, 1899?   Answer. Yes.

"*Third.* Was the deceased in sound health on September 5, 1899?   Answer. Yes.

"*Fourth.* Did the deceased suffer from an illness in January, 1899?.   Answer. No.

"*Fifth.* Did the deceased have a medical attendant for any illness in January, 1899?   Answer. No."

The defendant urges, as a preliminary question, that this amounted to a special verdict, and that, as all of the issues were not disposed of by the jury, there are not sufficient facts on which to found the judgment.   We are of opinion, however, that this is a mistaken view of the matter and that the defendant is not in a position to raise the question.   Defendant's counsel, at the close of the evidence, moved to dismiss the complaint upon the ground that the plaintiff had failed to prove a delivery of the policy.   This motion was denied and defendant took an exception.   If there was any evidence of the delivery of this policy, the court could not, as a matter of law, dispose of the question upon a motion to dismiss the complaint, and it cannot be doubted that there was evidence of such delivery.   The evidence of its physical delivery to the deceased was not disputed, and the defendant conceded that its agent was authorized to deliver the policy upon his own judgment as to the state of health of the insured, and there was evidence of the payment on the part of the

insured to the agent of the company in the manner customary in the conduct of ordinary business affairs by means of the deceased's check. The defendant's counsel then moved to dismiss the complaint on the ground "that there is already an express violation of the conditions of the policy in respect to sound health." At this point the court announced that it would submit some questions to the jury, and counsel for defendant excepted to the denial of the motion to dismiss upon this last ground and asked for the direction of a verdict for the defendant upon the breach of warranty and breach of conditions and excepted to a denial of this motion. The court then stated the questions given above, and defendant's counsel excepted to the submission of each and every one of these questions to the jury. There was no request to submit any other questions to the jury or that the case be submitted to the jury in any other form (*Carr* v. *Carr*, 52 N. Y. 251, 255), and the position of the defendant is merely that of asking the court to dispose of all of the questions, either of fact or law, upon its motions outlined above. It was not proposed by the court or assented to by counsel that there should be a special finding of the facts, leaving solely to the court the application of the law to the facts, but the court called upon the jury to determine five specific questions, upon which must depend the disposition of the case, and the defendant is hardly in a position to complain because the court preferred the judgment of the jury upon the facts to its own. It is not to be doubted that the court, upon the conceded facts, might have directed a verdict for the plaintiff, in so far as the question of the delivery of the policy is concerned ; it was purely a question of law, none of the material facts being controverted. (See Code Civ. Proc. § 1185.) The remaining facts involved in the defendant's motion were submitted to the jury, and, as we have already pointed out, there was evidence to support the findings of the jury. There was no error in the denial of the defendant's motions either to dismiss or to direct a verdict, and the record discloses all of the material facts necessary to support the judgment. (*Carr* v. *Carr*, *supra*.)

The defendant urges that the contract of insurance never came into life, because two essential elements, due delivery of the policy to the insured and payment by the insured of the first premium,

never took place, but we are of opinion that, under the conceded facts, Fred L. Genung was the general agent of the company to take applications and deliver the policies; and, if he was such agent, his act in waiving a condition was undoubtedly within his power. (*Ames* v. *Manhattan Life Ins. Co.*, 31 App. Div. 180; S. C., 40 id. 465, 468.) The physical delivery of the policy by the defendant's agent; the offer of the deceased to pay the premium at that time, and its deferment on the assurance of the company's agent that the insured had thirty days in which to make the payment, and the subsequent delivery of decedent's check to the agent of the defendant, constituted in law a consummation of the contract, and imposed a liability upon the company, unless fraud is established. While the relationship between the insured and the defendant's agent might be taken into consideration on the question of fraud, it is evident from the testimony that the company was aware of the relationship, and there is no reason for concluding that at the time the policy was delivered and accepted by the insured, the agent of the company had any reason to believe the risk was not a legitimate one. The offer of the insured to pay the money at the time of the delivery of the policy was an evidence of the consummation of the contract, and the mere deferring of the payment did not affect the question of the delivery, it being within the apparent scope of the agent's authority. (*Tooker* v. *Security Trust Co.*, 26 App. Div. 372, 376.)

There was a conflict of evidence as to whether the insured was treated by a physician in January, 1899, he having answered questions 3 and 4 in the insurance application in a manner to raise this as one of the issues. His answers, which were given under the general warranty clause in the policy, stated in effect that he was last under the doctor's care for *la grippe* in 1895; that it was the last time he was confined to the house by illness. Dr. Conklin testified that he had treated the insured in 1896 and again in January, 1899, but he was not very certain about the matter, and it was in evidence that the treatment was merely for a slight indisposition, a cold, which did not take the insured from his business. He had come into the house from his stores, according to the plaintiff's version of the matter, where the doctor was attending the family for *la grippe,* and had been given some medicine for a cold. Under the authorities this does not constitute a breach of the warranty

(*Dilleber* v. *Home Life Ins. Co.,* 69 N. Y. 257, 262; *Cushman* v. *United States Life Ins. Co., supra,* and authorities there cited), and the jury were alone competent to pass upon this question.

We have examined the remaining questions without finding reversible error.

The judgment and order appealed from should be affirmed, with costs.

All concurred.

Judgment and order affirmed, with costs.