in the record that the defendant Markus tendered to the plaintiff the sum of $10,000, with interest from January 4, 1904, to the 19th day of July, 1904, at the rate of 5 per cent. per annum; that being the day upon which the said tender was made. The statement upon the bond as to the receipt of interest on July 3, 1901, of $275, even if made by the mortgagee or in the presence of the mortgagor, would not be at all conclusive, for a part of the six months represented by this payment the interest was on $11,000. Just how that indorsement was made, does not appear, and it is not evidence against the defendant to overcome the presumption that the payment of $1,000 represented by this receipt was made on account of the mortgage; and the receipt of the subsequent interest down to January 4, 1904, at the rate of 5 per cent. upon $10,000, the amount which would be due upon the mortgage, crediting the $1,000 payment, corroborated the contention of the defendant Markus that the money represented by this receipt was paid on account of the mortgage. I do not think that any one can read this evidence without being satisfied that this payment was made to the mortgagee on account of the mortgage, and that the defendant was entitled to be credited with that amount.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

### VALENTINI v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Appellate Division, First Department. July 7, 1905.)

**1. WITNESSES—CROSS-EXAMINATION—SCOPE.**

Where, in an action on a life insurance policy, plaintiff's testimony in chief was limited to proving the filing of proofs of death, the nonpayment of the policy, etc., to establish a prima facie case, which matters defendant did not contest, defendant, by cross-examining her as to an alleged breach of warranty to establish its affirmative defense, made her its own witness, and the evidence given by her should be considered as affirmative evidence introduced by defendant.

**2. SAME—WARRANTY—BREACH.**

Consultation of a physician by insured's mother with or without his knowledge, when he was not suffering from any ailment or disease did not constitute a breach of warranty in a policy, in the application for which insured neglected to disclose such fact.

**3. SAME—EVIDENCE.**

Evidence that within two years prior to the issuance of a policy insured and his mother consulted a physician, who prescribed for him for "a sort of nervous twitch, as he would fall to sleep," which had not affected his health nor ability to attend to his business, did not, as a matter of law, constitute a breach of warranty in a policy in the application for which insured omitted to disclose such treatment and stated that he had not been under the care of a physician within two years, except certain attendance for rheumatism by another physician.

**4. SAME—EVIDENCE—CONCLUSIONS.**

Where, in an action on a policy, defendant denied liability because of an alleged breach of warranty with reference to medical attention, it was error for the court to require plaintiff as a witness for defendant to answer over objection the question, "Of course, your son [insured] was af-

. flicted at that time, and needed medical attention?" as such question called for a conclusion of the witness on the vital point in issue.

5. SAME.

On an issue as to whether insured was suffering from any disease or was in need of medical attention at the time it was claimed a physician attended him, evidence as to whether he attended his business regularly at the time was admissible.

Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by Cecelia W. Valentini against the Metropolitan Life Insurance Company. From a judgment dismissing the complaint on the merits and from an order directing a judgment to be entered, plaintiff appeals. Reversed.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Lewis H. Freedman, for appellant.

C. N. Bovee, for respondent.

HATCH, J. The action was brought to recover the sum of $1,000 upon a policy of life insurance issued by the defendant on the life of Harry Joseph Valentini, in which the plaintiff, his mother, was named as beneficiary. The complaint averred the making of the policy, a copy of which was attached to and made a part of the complaint, alleged compliance with its terms and conditions, the death of the insured, demand of payment, and refusal on the part of the defendant to pay. The defendant alleged, inter alia, a breach of warranty in answers given to questions propounded to the insured at the time of making application for the policy of insurance. The answers in the application which it is claimed constituted a breach of the warranty are as follows:

"(4) The following is the name of the physician who last attended me, the date of the attendance, and the name of the complaint for which he attended me. Dr. Goodwin. Rheumatism, 1898.

"(5) I have not been under the care of my physician within two years, unless as stated in previous line."

Whether there was a breach of warranty on the part of the insured in giving these answers presents the only question involved upon this appeal. Upon the trial the plaintiff introduced the policy of insurance, and proved the filing of the proofs of death and the nonpayment of the policy. This proof was given by the plaintiff, who was the only witness called upon the trial. The defendant did not contest any of the matters to which the plaintiff testified, and which established, prima facie, her right to recover. The defendant, upon cross-examination, attempted to establish by the witness that there had been a breach of warranty in the answers as above quoted. In other words, instead of cross-examining the witness, it entered upon proof of its affirmative defense to the enforcement of the policy. In this respect, over the objection and exception of the plaintiff, the defendant was permitted to ask leading questions, and draw from the witness several conclusions upon material matters. Very little, if any, of such examination, was proper

as cross-examination of anything to which the witness had testified. As the matter related solely to the defendant's affirmative defense, the witness in this respect became the witness of the defendant, and the testimony which she gave is to be weighed in the determination of this appeal as affirmative evidence introduced by the defendant to establish its defense.

The policy bore date June 19, 1901. The examination of the witness by the defendant tended to disclose that some time in 1898 or 1899, the date of which is not given, the witness consulted Dr. Bishop about getting some medicine for her son (the insured); that she went to Dr. Bishop's office a number of times for that purpose, and, after seeing him, she took her son, the date of which does not appear; and that some time in 1899, but on what particular date is not made to appear, the insured, her son, went alone to see Dr. Bishop, and thereafter sometimes the mother went to the doctor, and sometimes the son, and the doctor continued his treatment until the death of the insured. How often visits were made, or what the treatment was, does not appear. The witness also testified: "My son would take a nervous twitching just as he was dropping off to sleep, and that was what the whole trouble was, and what we consulted Dr. Bishop about; a sort of nervous twitch as he would fall asleep; that is all it was." And being asked if the necessity for medical attention continued during the period of time the insured was attending upon Dr. Bishop, the witness answered: "It was not necessary, but just for safety's sake. He was well and strong. He was running around. He was working from morning to night." This is the substantial testimony upon which the court felt constrained to direct a judgment dismissing the complaint upon the merits. So far as appears, the mother first called upon Dr. Bishop without the knowledge of the insured, and her consultation with the doctor could not create a breach of the warranty if the son knew nothing of it. The consultation by the mother without the knowledge of the son, or a consultation with his knowledge when he was not suffering from any ailment or disease, would not constitute either of his answers a breach of warranty. Crosby v. Security Mut. Life Ins. Co., 86 App. Div. 89, 83 N. Y. Supp. 140. It is well settled that a breach of warranty is an affirmative defense which the defendant is bound to establish. Dougherty v. Met. Life Ins. Co., 3 App. Div. 313, 38 N. Y. Supp. 258; Trudden v. Met. Life Ins. Co., 50 App. Div. 473, 64 N. Y. Supp. 183. Warranties in policies of insurance are to be strictly construed. "They will not be extended to include anything not necessarily implied in their terms. * * * When the language used in a policy may be understood in more senses than one, it is to be understood in the sense in which the insurer had reason to suppose it was understood by the assured." Dilleber v. Home Life Ins. Co., 69 N. Y. 256, 25 Am. Rep. 182. It has been held that answers to similar questions will not be construed as a breach of warranty as matter of law, unless it appears as matter of fact that the answer was false, and related to a material question. Thus, in Edgington v. Mut. Life Ins. Co., 67 N. Y. 185, certain questions in the application for in-

surance were as follows: "How long since you were attended by any physician? For what disease? Give name and residence of your usual medical attendant?" To these questions the insured answered: "Dr. Carpenter has known me two years. Have known him. Only consulted Dr. C. H. Carpenter now and then for slight ailments, and taken his prescriptions. C. H. Carpenter, Geneva, has known me three years." It was proven that prior to making these answers the insured had consulted Dr. Eastman, who made prescriptions for him. Dr. Avery also prepared medicines for him for a week or ten days after treatment by Dr. Eastman, and he also treated him five years afterward; and Dr. Pickup also prescribed for him in that year. Upon this proof the court said:

"It is apparent that the testimony is not very explicit as to the correctness of the answer, but, as the evidence stood, it was a fair question for the jury to determine whether the assured could be charged with an omission to give such information as the interrogatories were intended to elicit as constituted a fraudulent suppression of the truth and vitiated the policy."

The court held that such question was for the jury.

In Genung v. Met. Life Ins. Co., 60 App. Div. 424, 69 N. Y. Supp. 1041, the answer to the fourth question involved in this appeal, which is the first above quoted, was the subject of examination, the witness having answered that he was last under the doctor's care for la grippe in 1895, and it appeared that within two years he had been treated by another physician. The court said:

"Dr. Conklin testified that he had treated the insured in 1896, and again in 1899; that he is not very certain about the matter; and it is in evidence that the treatment was merely for a slight indisposition—a cold—which did not take the insured from his business. He had come into the house from his stores, according to the plaintiff's version of the matter, where the doctor was attending the family for la grippe, and had been given a medicine for a cold. Under the authorities this does not constitute a breach of warranty."

In Cushman v. U. S. Life Ins. Co., 70 N. Y. 72, the claimed breach was an answer in the negative to a question "had the insured ever had disease of the liver"? It was testified to by a physician that before the making of this answer he had attended the insured in 1870, in 1871, before the policy, and in 1872, after the policy was issued, and again in 1873, in his last illness; that he then had congestion of the liver, and died of acute congestion of that organ. The court held that the testimony failed to establish that he had a disease of the liver at the time as matter of law; that the question contemplated whether there was disease of that organ, and mere slight and temporary attacks of congestion of the liver did not establish a breach of warranty as matter of law. A similar rule is announced in Schmidt v. Michigan Mut. Life Ins. Co., 101 App. Div. 12, 91 N. Y. Supp. 448; Billings v. Met. Life Ins. Co., 70 Vt. 477, 41 Atl. 516.

Applying these rules of law to the facts of this case, it is manifest that a breach of warranty was not established as matter of law. Assuming that the attendance by Dr. Bishop was within two years of the time when the answers were given, yet it was not made to appear that the assured was afflicted with any disease which called

for medical attendance, or that it was other or different than a mere fear engendered in the mind of the mother that the son was in need of some medical attendance. It is made affirmatively to appear that the trouble at the most was a slight nervous twitching, which did not interfere with the physical vigor of the insured, or with his ability to attend to his business. The purpose of the question and answer was to inform the defendant as to the physical condition of the applicant and his probable duration of life, and before the court is justified in holding that there is a breach of warranty it must appear that attendance by a physician had been for some substantial disorder, and not for a mere functional and temporary indisposition. This the evidence failed to establish, and the court was not, therefore, justified in determining the question as matter of law.

The court also committed error in permitting, over the objection and exception of the plaintiff, an answer to the following question: "Of course, your son was afflicted at that time, and needed medical attention?" to which the witness answered, "Yes." This was clearly error. It called for the conclusion of the witness upon a vital point in the case. The objection raised the precise question. As we have seen, upon this subject the witness was the defendant's. It was engaged in establishing its defense, and the conclusion given by the witness tended directly to settle the issues in favor of the defendant, and that without the intervention of either the court or jury. The witness was not qualified to speak as to the need of the insured of medical attendance; and, so far as she testified to facts, there is nothing to show that he was in need of such attendance at the time when she first called upon Dr. Bishop, or at any other period prior to the application. The examination contains several such errors.

Upon redirect examination the witness testified that her son was in business up to the time he died. The plaintiff was asked, "Did he attend his business regularly?" Objection was interposed as irrelevant and immaterial. The objection was sustained, and plaintiff excepted. The question was proper, and the answer should have been permitted. It bore directly upon the question as to whether the insured was suffering from any disease or in need of medical attendance at the time when it is claimed Dr. Bishop attended him. It tended directly to rebut the evidence which the defendant deemed essential that medical attendance upon the insured was necessary.

It follows from these views that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. The appeal from the order is dismissed without costs, as the appeal from the judgment is all that was necessary to present the question.

O'BRIEN, P. J., and PATTERSON and McLAUGHLIN, JJ., concur. INGRAHAM, J., dissents.