See section 56 of the real property law above mentioned.

In the present case there would be a lapsing of the legacy of Frank Schneider, except for the fact that the statute prevents the lapsing of a devise to children. Rev. St. (1st Ed.) pt. 2, c. 6, tit. 1, art. 3, § 52; 2 Rev. St. N. Y. (Banks & Bros.' 9th Ed.) p. 1880. If Frank Schneider, the legatee, had lived, the children would have taken as tenants in common, and his death does not change the character of the bequest.. McDonald v. McDonald, 71 App. Div. 166, 75 N. Y. Supp. 674.

In Matter of Truslow et al., 140 N. Y. 599, 35 N. E. 955, the provisions of the will in that case indicated a clear intention on the part of the testator to confine the bequests to the children, using the word in its restricted sense, and the opinion of the court proceeds on the assumption that the language employed by the testator in declaring his purpose is too clear and plain to allow the ordinary rule to prevail.

The court will do its utmost, without violating the plain purpose of the testator, to prevent the disinheritance of the issue of children. Shangle v. Hallock, 6 App. Div. 57, 39 N. Y. Supp. 619; Matter of Miller, 18 App. Div. 211, 45 N. Y. Supp. 956; Matter of Manning, 50 App. Div. 408, 64 N. Y. Supp. 222.

I concur in the conclusion reached by the Presiding Justice on the other two propositions discussed by him.

WILLIAMS and NASH, JJ., concur.

---

CARR v. PRUDENTIAL INS. CO. OF AMERICA.

(Supreme Court, Appellate Division, Fourth Department. November 14, 1906.)

1. EVIDENCE—BEST AND SECONDARY—NOTICE TO PRODUCE INSURANCE POLICY —COPY.

A life policy was sent to the company with the proofs of loss, and in an action on the policy the company, after notice served by plaintiff, produced a policy which they claimed was the original. Plaintiff denied this, and defendant, being unable to make the necessary proof to admit such policy in evidence, did not ask an adjournment for the purpose of identifying it. *Held*, that a copy of the original policy made by plaintiff's attorney while preparing the proofs of loss was properly admitted in evidence.

2. INSURANCE—NONPAYMENT OF PREMIUMS—EXTENSION OF TIME—FORM OF RE- CEIPT.

By the express terms of a life policy, it remained in force for a month of grace after the due date of a premium. During such month of grace, a partial payment of the premium was made, and an oral indefinite extension of time of payment made. The receipt given, however, was a revival receipt reciting that it was for the "amount of arrears," and providing that the receipt should not be construed as "renewing or creating any liability." *Held*, that the extension did not violate the terms of the receipt, since the liability already existed.

3. SAME—AUTHORITY OF AGENT.

A general agent and superintendent of a life insurance company, on whose authority no limitation is shown, can, on receiving partial payment on a premium during the life of the policy, assent to the continu-

ance of the policy until the balance is paid, and afterwards receive such balance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 915.]

4. SAME—EVIDENCE OF EXTENSION—SUFFICIENCY.

In an action on a life insurance policy, evidence *held* sufficient to support a finding that the agent of the company extended the time for payment of the premium.

5. APPEAL—REVIEW—PRESUMPTIONS—DISPUTED FACTS FAVORING JUDGMENT.

In an action on a life policy, it appeared that certain premiums were paid to the company after the policy was no longer in force, as claimed by the company, but under an agreement of extension, as claimed by the beneficiary. There was testimony pro and con as to an offer to return this money, but the jury did not pass on the question, no one requested its submission, and no tender was made in the action. *Held* that, on appeal from a judgment for plaintiff, it must be assumed that the company accepted the payments.

6. SAME—OBJECTIONS NOT MADE BELOW.

It cannot be contended for the first time, on appeal from a judgment based on a life insurance policy, that the application which was in defendant's possession was a part of the contract and should have been admitted in evidence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, §§ 1281, 1282.]

7. INSURANCE—QUESTIONS FOR JURY—EXTENSION OF TIME—CONFLICT OF EVIDENCE.

In an action on a life insurance policy, a conflict in the testimony as to whether overdue premiums were received in accordance with an agreement for an extension of time or as revivals of the contract, contingent on insured's health, raises a question of fact precluding a nonsuit on defendant's theory.

8. SAME—MAILING OF NOTICE.

Laws 1897, p. 92, c. 218, § 92, requiring the mailing of a certain notice before a life insurance policy can be forfeited for nonpayment of premiums, provides that the affidavit of the proper agent as to the mailing of the notice shall be presumptive evidence thereof. An affidavit introduced for such purpose had no authentication of the official character of the notary, and the beneficiary testified to facts from which it might have been inferred that the notice was never received. *Held*, to present such a question of fact as to preclude nonsuit.

9. EVIDENCE—CONCLUSIONS OF WITNESS—AGENCY—ADMISSIBILITY.

In an action on a life insurance policy, a general agent cannot testify in general terms and conclusions as to his powers and lack of authority to modify or issue a policy of insurance.

10. APPEAL—HARMLESS ERROR—ERROR FAVORABLE TO APPELLANT.

Where, in an action on a life insurance policy, the jury might have found that the notice required to forfeit a policy by Laws 1897, p. 92, c. 218, § 92, was never given, defendant cannot complain on appeal of a refusal of plaintiff's request to submit it to the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4056, 4057.]

11. INSURANCE—AGENCY—POWER OF GENERAL AGENT—INSTRUCTIONS.

Where a general agent and superintendent of a life insurance company testifies as to the extensive scope of his powers, and no limitation of his authority is shown, it is proper to instruct that he can bind his company by an extension for the time of payment of a premium.

Appeal from Trial Term, Erie County.

Action by Catherine Carr against the Prudential Insurance Com-

pany of America. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

L. M. Cummings, for appellant.
Clarence U. Carruth, for respondent.

SPRING, J. The defendant, a foreign insurance company, issued its policy on July 12, 1902, whereby it insured the life of John Carr of the city of Buffalo in the sum of $500 to be paid to his widow, the plaintiff, upon satisfactory proof of his death. The premiums, each of $6.29, were payable quarterly, the first of which was due and paid on the 12th day of October, 1902. The second payment fell due on the 12th of January following, which the defendant claims was never paid; and it was with reference to that premium that the present controversy has arisen.

Mr. Carr died on the 16th of March, 1903, and satisfactory proofs of his death were shortly after sent to the defendant and retained by it. The assured did not pay the premium falling due January 12th at that time, but on the 22d of that month paid Mr. Joyce, the general agent and superintendent of the defendant at Buffalo, the sum of $2. Mrs. Carr testified that she was present when this payment was made, and that her "husband told Mr. Joyce that all he had to pay on the premium was $2, and Mr. Joyce said 'all right' and told him to pay the rest as soon as he could. My husband went home and put the slip away, and never looked at it. That is all that took place there." The slip referred to was a receipt signed by the superintendent reciting that it was for "the amount of the arrears on" the policy, and contains this provision:

"This receipt is issued upon the express understanding that, if the company declines to approve such application, the above amount will be refunded in exchange for this receipt, and that in no case shall this receipt be construed as renewing or creating any liability on behalf of this company under the above policy."

The plaintiff testified that on the 9th of March she paid to Mr. Joyce $4.29, the balance of this quarterly payment remaining unpaid. The former receipt was changed by Mr. Joyce erasing the word "two" and substituting the word "six," so that the receipt acknowledged the payment of $6.29, and in that form it was delivered to the plaintiff. The plaintiff testified that Mr. Joyce told her "when the next premium was due to have it," and she therefore paid him the amount of the premium which would mature on the 12th of the next April, and he gave her a receipt therefor in form like the one mentioned, even in reciting that it was "for arrears" and with the clause above quoted.

The payments of money are not disputed, but Mr. Joyce does not agree with the plaintiff as to either conversation. He testified that he told Carr at the time of the $2 payment that only 8 or 10 days remained in which to pay the full premium, and, further:

"I told him if he cared to he could pay whatever portion he had of it, and we would give him a revival receipt on the condition that he paid the rest

before the 30 days expired, and, if he paid it, it would be all right. He paid $2, and a revival certificate was given to him."

His narration of the conversation with Mrs. Carr in March is:

"I told her, of course, the policy had been canceled, as I had told her husband when he paid the $2, that it would have to be canceled, unless he got the rest paid, but that we would write out a revival application and send the doctor to make an examination, and, if he found Mr. Carr in good health, that it would be all right. And then I think I further said: 'Your next premium will be due in a very few days now, and you had better pay that, too, and we will give you a receipt for it, and, if he is accepted, why you will have his next premium paid.' She paid $6.29, the second premium, as she says. I told her that this money, of course, would be accepted on a revival receipt and subject to her husband being in good health, and that I would send an examiner there to make an examination."

This disagreement constituted the chief disputed question of fact and was the only one left for the jury to pass upon. The court stated to the jury:

"The question is simply: Was this premium, due in the month of January, extended by the agreement of the parties? If it was, this plaintiff is undoubtedly entitled to recover. If you believe that it was not, that is the end of this lawsuit."

And again.

"To recapitulate, the question for you to determine is, first, was this extension of time, as claimed by the plaintiff, made? Do you believe it was made? If you do, then the plaintiff must recover."

The trial took a peculiar turn. The defendant's counsel produced what he said was the insurance policy insuring the life of Carr, and the counsel for the plaintiff, who had served notice to produce the same, denied that the policy presented was the one issued. The defendant was unable to make the necessary proof to permit it to be admitted in evidence. The plaintiff's attorney testified that he had in his possession at the time of preparing the proofs of loss the original policy and made a copy of it, sending the original with the proofs of loss to the defendant. He said that the policy offered by the defendant was not the original policy; that the genuine policy did not contain the conditions appearing in the one produced, and the copy was received in evidence. Apparently the policy presented by the defendant's counsel contained conditions pertaining to revival receipts given upon failure to pay the premiums in time, and possibly some limitation upon the authority of the agents of the company. But the policy presented is not in the record, and no effort was made by the defendant's counsel to secure an adjournment of the trial for the purpose of identifying the policy he had. He objected to the reception of the copy, but, inasmuch as the defendant failed to produce, after notice, the genuine policy, or one which could be identified as that policy, the copy was admissible. The original policy was in the custody of the defendant, and, unless produced by it, secondary proof of its contents must have been expected. The policy in evidence therefore imposed no obligation upon the insured in the event he failed to pay the premium at maturity, but subsequently paid it. For aught that appears, its acceptance at any time revived the policy, if it ever lapsed.

The policy in evidence contains this clause:

"In the payment of any premium under this policy, except the first, a grace of one month will be allowed, during which time the policy will remain in force."

The policy therefore was in force at the time of the payment of the $2, and the extension based upon it. This extension agreement did not "renew or create any liability on behalf of the company under the above policy," for the liability then existed, as the 30-day period had not elapsed. Section 92 of the Insurance Law (section 92, c. 218, p. 92, Laws 1897) in any event prevented the forfeiture of the policy during this 30-day period.

So far as appears, Joyce, who was the superintendent and general agent, had ample authority to receive a part of the premium, and months later, without any examination as to the physical condition of the assured, receive the balance; the policy not abating in the meantime, and, if so, becoming revived upon full payment. As superintendent and general agent, he had authority to receive the $2 and assent to the continuance of the policy until the balance was paid, and in March to receive such balance. Cross v. Security Trust & Life Ins. Co., 58 App. Div. 602, 69 N. Y. Supp. 189, affirmed 171 N. Y. 671, 67 N. E. 1120; Marcus v. St. Louis Mut. Life Ins. Co., 68 N. Y. 625; Wood v. American Fire Ins. Co., 149 N. Y. 382–385, 44 N. E. 80, 52 Am. St. Rep. 733; Genung v. Met. Life Ins. Co., 60 App. Div. 424–428, et seq., 69 N. Y. Supp. 1041.

The evidence justifies the finding that Joyce assented to the extension when the $2 were paid. It is undisputed that on the 9th of March he received the balance of this premium, and also the premium for the next quarter, and no part of this has been returned to the plaintiff. He testified that, when he gave the blank proofs of loss to Shields, the attorney for the plaintiff, he tendered him this money. Shields denied this, and the question was not submitted to the jury, and no one requested its submission. There is no pretense that any tender was ever made to the plaintiff in this action, so we must assume that the defendant accepted this money, both the $2 in January, the balance of the premium paid in March, and also the advance payment in April.

The appellant's counsel claims that the application for the policy is a part of the insurance contract and should have been received in evidence. No such objection was suggested on the trial, and the application was in the possession of the defendant, not the plaintiff.

It is urged that the court erred in not granting a nonsuit. There was a question of fact as to the extension of the time to pay the premium. There was also a question of fact as to what occurred at the time the premium was paid in March. It was also a question of fact as to whether the defendant mailed the notice to Carr in December pursuant to section 92, c. 218, p. 92, Laws 1897 (section 92 of the Insurance Law) and which is essential to enable it to declare the policy forfeited, although this question was not submitted to the jury. The only proof on behalf of the defendant as to the mailing of this notice was the alleged affidavit of one Fuerth, stating that fact. The affidavit of the person authorized is by statute made presumptive evidence of

the mailing (section 92), but there was no authentication of the official character of the notary, and Mrs. Carr testified to facts from which the jury might have found that the notice was never received. Howell v. Hancock Mut. Life Ins. Co., 107 App. Div. 200, 95 N. Y. Supp. 87, affirmed (October 26, 1906) 186 N. Y. ——, 78 N. E. 1105. Nor did the court err in excluding the general statements of Joyce as to his authority or that he could not modify or issue a policy of insurance, or as to what his duties and powers were. These were all conclusions and were not the proper manner of proving the restrictions upon his general agency, and he was permitted to go beyond the rule rather than invade it in this class of testimony. The court erred in his charge to the jury and during the trial, but the errors, so far as material, are against the plaintiff, and of these the defendant cannot complain. For instance, the jury might have found from the evidence that the notice mentioned in section 92 was not served, but the court declined to submit this question upon the request of the counsel for the plaintiff.

The defendant's counsel asked the court to charge that:

"If Mr. Joyce, as the agent of this party, was in a position to charge the defendant, then that must be shown. His authority to the effect of extending the time by the payment of the premium must have been shown. That cannot be taken by implication."

The court replied:

"I will charge as a matter of law, by virtue of his office as general agent and superintendent, that the plaintiff had a right to rely upon his promise and agreement, and that that promise would bind the company."

The instruction was correct, for there was no proof of any limitation upon the authority of Joyce, and he, in fact, testified to the extensive scope of his agency.

We are unable to say whether the various requests relative to the revival interim receipts were correctly decided or not, for the record does not enlighten us as to their significance or their relations to the policy. While the record is not at all satisfactory, we think there was a question of fact that was properly submitted to the jury, and there was no error of which the defendant can justly complain.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.